# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Aaron Norgren,

       Plaintiff,

v.

Minnesota Department of Human
Services, and Commissioner Jodi
Harpstead, in her individual capacity,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 22-2009 ADM/JFD

---

Anne St. Amant, Esq. and Daniel J Cragg, Esq., Eckland & Blando LLP, Minneapolis, MN, on
behalf of Plaintiff.

Kathleen M Ghreichi, Assistant Minnesota Attorney General, Minnesota Attorney General's
Office, St. Paul, MN, on behalf of Defendants.

---

## I.  INTRODUCTION

On November 8, 2022, the undersigned United States District Judge heard oral argument

on Defendants Minnesota Department of Human Services ("DHS") and Commissioner Jodi

Harpstead's ("Commissioner Harpstead") Motion to Dismiss the Complaint [Docket No. 7].  For

the reasons set forth below, the Motion is granted.

## II.  BACKGROUND

Plaintiff Aaron Norgren ("Norgren") is a Christian and 25% Native American.  Compl.

[Docket No. 1] ¶ 7.  He has worked for DHS for nine years as a Forensic Support Specialist with

the Forensic Mental Health Program ("FMHP"), formerly known as the Security Hospital, in St.

Peter, Minnesota.  Id. ¶¶ 9-10.

In August 2020, Norgren received an email from DHS Supervisor Luke Pherson ("Supervisor Pherson") directing that Norgren complete workplace trainings titled "How to be Antiracist," and "Understanding Gender Identity and Expression:  Moving Beyond the Binary." Id. ¶¶ 13, 14, 17.  These trainings were not directed solely at Norgren, but rather were required of all DHS employees across the board.  Id. ¶¶ 16-18.

Norgren opposed the anti-racism training because he equates it to Critical Race Theory ("CRT"), id. ¶ 20, which he views as violating "the traditional view of equality under Title VII." Id. ¶ 21.  Norgren also opposed the gender identity training because he views the concept of nonbinary gender to be "contrary to his sincerely held religious belief."  Id. ¶ 23.  Norgren voiced his opposition orally and in writing to his direct supervisor, Robert Schweisthal ("Supervisor Schweisthal"), and to Supervisor Pherson.  Id. ¶ 22.  He also sought but was denied a religious exemption from the trainings from the DHS' Director of Equal Opportunity and Access Division ("EOAD").  Id. ¶¶ 25-26.

Sometime after Norgren objected to the trainings, DHS denied him a day off when he attempted to call in for bad weather, a practice that Norgren alleges is "normally not questioned and frequently afforded to other employees."  Id. ¶ 35.  Norgren was eventually allotted the day off retroactively, but the process took a month and required review by multiple supervisors and Human Resources.  Id. ¶ 36.  Norgren filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on June 25, 2021 based on the leave incident.  Id. ¶ 37.

In February 2021, months after Norgren had objected to and been denied an exemption from the trainings but four months before he filed the EEOC charge, Norgren applied for a temporary position of Group Supervisor Assistant.  Id. ¶ 38, Ex. A.  Norgren was invited to interview but was unable to do so because of scheduling conflicts and the short interview

timeline.  Id. ¶ 39, Ex. A.  Administrative Operations Director Ted Wondra ("Wondra")

encouraged Norgren to apply for the permanent Group Supervisor Assistant position once it was

posted.  Id. ¶ 40, Ex. A.

When the permanent position was posted in June 2021, Norgren applied for the position

and submitted the same resume with the same qualifications he had used for the temporary

position in February.  Id. ¶ 41.  The minimum qualifications for the permanent Group Supervisor

Assistant position differed from those for the temporary position.  See Ghreichi Decl. [Docket

No. 10] Exs. A, B (job postings for temporary and permanent positions).[1]  The posting for the

temporary position stated that "applicants are preferred to have" a minimum of one year of lead

work or professional experience in a secure environment or one year of supervisory experience

in a secure environment.  Id. Ex. A (emphases added).  In contrast, the posting for the permanent

position stated that "applicants must have" a minimum of one year of supervisory experience in a

secure environment or two years of lead work or paraprofessional experience in a secure

environment.  Id. Ex. B (emphases added).

Both postings stated that a bachelor's degree or one year of supervisory experience in

another environment could substitute for six months of leadwork or professional or supervisory

experience, and that an "equivalent combination" could be used to meet the experience

requirements.  Id. ¶ 43-44, Exs. A, B.  Norgren relied on his bachelor's degree in criminal justice

and his supervisory experience in the military to substitute for six months of the

---

[1]  In deciding the motion to dismiss, the Court may consider the postings for the temporary and permanent Group Supervisor Assistant positions because the postings are "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003).

leadwork/professional/supervisory experience required for the permanent position.  Id. ¶ 45, Ex. B.

On July 16, 2021, one month after Norgren had filed the EEOC charge, Norgren was told that he was not eligible for an interview for the Permanent Group Supervisor Assistant position because he did not meet the minimum job qualifications for the permanent position.  Id. ¶ 42.  In November 2021, Norgren amended his EEOC charge to include allegations about the lost promotional opportunity.  Id. ¶ 49.  The EEOC dismissed the charge and issued a Notice of Right to Sue on May 20, 2022.  Id. ¶ 50, Ex. B.

Norgren filed this lawsuit on August 15, 2022.  The Complaint asserts claims against DHS for racial and religious discrimination and retaliation under Title VII and the Minnesota Human Rights Act ("MHRA").  Id. ¶¶  51-74, 86-108.  Norgren also asserts a claim against Commissioner Harpstead under 42 U.S.C. § 1983 for First Amendment retaliation and compelled speech.  Id. ¶¶ 75-85.  Defendants move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3).

## III.  DISCUSSION

### A.  Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

When deciding a motion to dismiss, the Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." <u>Illig v. Union Elec. Co.</u>, 652 F.3d 971, 976 (8th Cir. 2011). Materials embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." <u>Kushner</u>, 317 F.3d at 831.

A pleading must relate sufficient "facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Although detailed factual allegations are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

A party may also move for dismissal under Rule 12 based on lack of subject matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1). Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

**B. Title VII Race Discrimination (Count I)**

In Count I, Norgren alleges that DHS unlawfully discriminated against him based on his race in violation of Title VII, 42 U.S.C. § 2000e-2. Specifically, Norgren alleges he suffered an adverse employment action because of his race when DHS denied him "the opportunity for a promotion to the Group Supervisor Assistant position." Compl. ¶ 55.

To establish a prima facie case of racial discrimination in a failure-to-promote claim, Norgren must show that he (1) is a member of a protected group; (2) was qualified and applied for a promotion to an available position; (3) was rejected; and that (4) similarly situated employees who are not part of the protected group were promoted instead. Allen v. Tobacco Superstore, Inc., 475 F.3d 931, 937 (8th Cir. 2007) (citing Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996)). A similarly situated employee "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

Although a plaintiff need not plead facts establishing a prima facie case for their Title VII discrimination claim at the pleading stage, the elements of a prima facie case "are part of the background against which a plausibility determination should be made," and "may be used as a prism to shed light upon the plausibility of the claim." Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016) (quoting Rodriguez–Reyes v. Molina–Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)). As such, "the allegations in a complaint must give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas."[2] Warmington v. Bd. of Regents

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

6

of Univ. of Minn., 998 F.3d 789, 796 (8th Cir. 2021) (emphasis in original) (internal quotations omitted).

Here, the Complaint fails to allege any facts to plausibly support the fourth element of Norgren's race discrimination claim---that similarly situated employees outside Norgren's protected group were promoted instead of Norgren. The Complaint does not even allege that the permanent Group Supervisor Assistant position to which Norgren applied was filled, much less facts from which the Court could infer that the successful candidate engaged in similar behavior and was not a member of Norgren's protected group. Instead, the Complaint makes the thread-bare and conclusory allegation that "[o]ther similarly-situated employees, who are not in the same protected class as Plaintiff, were not denied the opportunity for such promotion." Compl. ¶ 57. This allegation is not sufficient to give facial plausibility to Norgren's race discrimination claim. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) "[T]he complaint must include sufficient factual allegations to provide the grounds on which the claim rests.").

Accordingly, Count I is dismissed for failure to state a claim for race discrimination under Title VII.

## C. Title VII Religious Discrimination (Count II)

In Count II, Norgren alleges that the DHS discriminated against him by denying him the opportunity for a promotion to the permanent Group Supervisor Assistant position "due to his opposition to the Gender Identity Training, as a Christian." Compl. ¶ 64. Norgren alleges that similarly situated employees who are not in the same protected class were not denied the opportunity for such a promotion. Id. ¶ 65.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of that individual's religion.  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of religious discrimination based on disparate treatment,[3] a plaintiff must show:

> (1) the plaintiff was a member of a protected class because of the plaintiff's religious affiliation or beliefs; (2) the employee informed the employer of his religious beliefs; (3) the plaintiff was qualified for the position; (4) despite the plaintiff's qualifications, the plaintiff was fired or suffered an adverse employment action; and (5) similarly situated employees outside of the plaintiff's protected class were treated differently or there is other evidence giving rise to an inference of discrimination.

Frangesh v. Potter, No. 06-4951 (DWF/SRN), 2007 WL 4224054, at *4–5 (D. Minn. Nov. 27, 2007) (quoting Brasch v. Peters, 479 F. Supp. 2d 1045, 1064 (E.D. Mo. 2007)).

Here, the Complaint fails to plead facts to plausibly support the fifth element of a disparate treatment religious discrimination claim---that similarly situated employees were treated differently or that there is other evidence giving rise to an inference of discrimination. Rather than pleading factual content to give plausible support to this element, the Complaint formulaically recites that "[o]ther similarly-situated employees, who are not in the same protected class as Plaintiff, were not denied the opportunity for such a promotion."  Compl. ¶ 65. This conclusory and threadbare allegation is not sufficient to plausibly allege that similarly situated employees of a different religion, who also objected to the diversity training, applied for and were promoted to the permanent Group Supervisor Assistant position.  Cf. Warmington, 998 F.3d at 798 (holding that plaintiff failed to plausibly plead allegations giving rise to an inference

---

[3] Norgren characterizes his religious discrimination claim as a disparate treatment claim that is based on indirect evidence.  Pl.'s Mem. Opp'n [Docket No. 17] at 14.

of sex discrimination because she did not specify the sex of the "other coaches" who were treated differently, "leaving this court unable to conclude she was only treated differently than other <u>male</u> coaches") (emphasis in original); <u>see also Iqbal</u>, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

Accordingly, Count II is dismissed for failure to state a claim for religious discrimination under Title VII.

**D. Title VII Retaliation (Count III)**

In Count III, Norgren alleges that DHS retaliated against him in violation of Title VII. The anti-retaliation provision of Title VII prohibits an employer from retaliating against an employee who has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 59 (2006) (quoting § 2000e–3(a)).

Absent direct evidence, a plaintiff establishes a prima facie case of retaliation by showing:  (1) "he engaged in protected activity;" (2) "he suffered a materially adverse action that would deter a reasonable employee from making a charge of employment discrimination;" and (3) "there is a causal connection between the protected activity and the adverse action."  <u>Gibson v. Am. Greetings Corp.</u>, 670 F.3d 844, 856 (8th Cir. 2012) (quoting <u>Barber v. C1 Truck Driver Training, LLC</u>, 656 F.3d 782, 801-02 (8th Cir. 2011)).  To show causation, a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 362 (2013).

Norgren alleges that filing his initial EEOC charge constitutes protected activity, and that DHS' subsequent denial of the opportunity for Norgren to interview for the permanent Group

Supervisor Assistant position constitutes a materially adverse action.  Compl. ¶¶ 70-71.

Assuming without deciding that the Complaint includes sufficient factual allegations to plausibly

support the first two elements of a claim for Title VII retaliation, the claim nevertheless fails

because no facts are alleged from which the Court could infer that the adverse action is causally

connected to the protected activity.

 The Complaint alleges that  Norgren applied for the permanent Group Supervisor

Assistant position by "submitting his resume with the same qualifications he used in February,"

and that "after Norgren brought his EEOC Charge, he was told he failed to meet the minimum

mandatory qualifications he had met in the past."  Id. ¶¶ 41, 47.

These allegations fail to support a plausible inference of but-for causation, because the

minimum qualifications for the permanent Group Supervisor Assistant position were more

rigorous than the temporary position.  The permanent position required a full additional year of

leadwork or professional experience.  See Greichi Decl. Exs. A, B.  Additionally, the minimum

qualifications were mandatory for the permanent position but were merely "preferred" for the

temporary position.  Id.  As such, the allegations that DHS had considered Norgren as satisfying

the minimal qualifications of the temporary position, but not the more demanding requirements

of the permanent position, do not give rise to a plausible inference of but-for causation.

Additionally, although Norgren was denied an interview for the permanent position after

filing his EEOC charge, the mere timing of these events is not, by itself, sufficient to state a

plausible claim.  See Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir.

2002) ("[A] mere coincidence of timing can rarely be sufficient to establish a submissible case of

retaliatory discharge.") (internal quotation marks omitted).  The Complaint thus fails to allege

facts to support a causal relationship between Norgren's protected activity and DHS' failure to offer Norgren an interview for the permanent Group Supervisor Assistant position.

Attempting to rebut this conclusion, Norgren argues that he qualified for <u>both</u> positions. Pl.'s Mem. Opp'n at 10. The Complaint vaguely alleges that Norgren "had been considered previously for other positions throughout DHS" with the same minimum qualifications, Compl. ¶ 46, and that this demonstrates that Norgren's bachelor's degree in criminal justice and his supervisory experience in the military fell within the "equivalent combination" component of the permanent position's requirements. <u>Id.</u> ¶ 45. However, the only other position identified in the Complaint is the temporary position, which only required half the leadwork/professional experience as the permanent position. Accordingly, the Complaint does not include sufficient factual content from which the Court can infer that DHS' failure to offer Norgren an interview for the permanent Group Supervisor Assistant position was causally connected to his protected activity.

Accordingly, Count III is dismissed for failure to state a claim for retaliation under Title VII.

**E.  Section 1983 Claim Against Commissioner Harpstead (Count IV)**

In Count IV, Norgren asserts a claim under 42 U.S.C. § 1983 against Commissioner Harpstead, in her individual capacity, for First Amendment retaliation and compelled speech. Defendants argue that the claim fails because:  1) Norgren has not alleged that Commissioner Harpstead personally committed a constitutional violation; 2) Norgren has not alleged facts to plausibly support the elements of a First Amendment retaliation or compelled speech claim; and 3) Commissioner Harpstead is entitled to qualified immunity.

### 1.  No Individual Actions by Commissioner Harpstead

It is well established that in actions under § 1983, government officials cannot be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  Iqbal, 556 U.S. at 676; Whitson v. Stone Cnty. Jail, 602 F.3d 920, 928 (8th Cir. 2010).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676 (emphasis added).

The Amended Complaint does not allege specific personal conduct on the part of Commissioner Harpstead in violation of Norgren's constitutional rights.  Instead, the allegations are directed at DHS supervisors who "promulgated" the trainings.  Compl. ¶¶ 82-83.  The Complaint also makes conclusory legal assertions that Commissioner Harpstead "engaged in promotion discrimination against Plaintiff" and "willfully deprived Plaintiff of his right to freedom of speech and his freedom of religion", id. ¶¶ 79-80, 84, but does not plead any factual assertions to support such a claim.  Because Norgren does not allege specific personal conduct on the part of Commissioner Harpstead in violation of his First Amendment rights, he fails to state a claim under § 1983.

Seeking to avoid this conclusion, Norgren argues that a § 1983 action may be "predicated on a supervisor's failure to supervise or control her subordinates."  Pl.'s Mem. Opp'n at 18.  However, Norgren has not pleaded such a claim and instead alleges First Amendment retaliation.  Compl. ¶¶ 75-85.  Additionally, the Complaint lacks any allegations that Commissioner Harpstead's supervisory conduct caused a deprivation of constitutional rights or that she had notice of a pattern of unconstitutional conduct by her subordinates.  See Perkins v. Hastings, 915 F.3d 512, 524 (8th Cir. 2019) (noting that for supervisory liability to attach, a plaintiff must show

that the supervisor "had notice of a pattern of unconstitutional acts committed by subordinates"); Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001) (stating that a supervisor may be liable under § 1983 "if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights") (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir.1996)).

### 2.  No Plausible First Amendment Claims

The § 1983 claim fails for the additional reason that Norgren has not alleged facts to plausibly support the elements of a First Amendment retaliation or compelled speech claim.

#### a.  No First Amendment Retaliation

To state a First Amendment retaliation claim under § 1983, a plaintiff must plead facts showing:  "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).

Norgren argues he suffered an adverse action in the form of promotion discrimination. However, the Complaint lacks any factual content that would allow the Court to draw the inference that Commissioner Harpstead personally took any adverse action against Norgren to chill his speech.  Nor are there any allegations that Commissioner Harpstead had any involvement in determining that Norgren did not meet the required qualifications for the permanent job position, or that she was even aware he had applied for the position.  The Complaint's threadbare allegation that Commissioner Harpstead "engaged in promotion discrimination against Plaintiff" is insufficient to state a First Amendment retaliation claim. Compl. ¶¶ 79, 84.

**b. No Compelled Speech**

The First Amendment forbids the government from "[c]ompelling individuals to mouth support for views they find objectionable."  Janus v. AFSCME, 138 S. Ct. 2448, 2463 (2018). To establish a compelled speech claim, Norgren must show:  "(1) speech; (2) to which he objects; that is (3) compelled by some governmental action."  Cressman v. Thompson, 798 F.3d 938, 951 (10th Cir. 2015).

Norgren has not alleged a plausible claim for compelled speech because he has failed to allege facts to plausibly support the third element---that his speech was compelled by governmental action.  The Complaint is devoid of factual allegations showing that Commissioner Harpstead ever compelled Norgren to make or refrain from making any statements relating to anti-racism or gender identity issues.  There are no allegations that Norgren was told he would be subject to discipline unless he made or refrained from making certain statements, or that Norgren was compelled to affirmatively make statements in front of a supervisor or submit an affidavit attesting to the statements.  Because the Complaint does not allege facts from which to infer that Norgren's speech was compelled by government action, it fails to state a First Amendment compelled speech claim.

**3. Qualified Immunity**

Even if Norgren had plausibly alleged that Commissioner Harpstead violated his First Amendment rights, Commissioner Harpstead is entitled to qualified immunity.  Qualified immunity shields government officials from § 1983 lawsuits and liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."  LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). "To overcome qualified immunity at the pleadings stage, a plaintiff must plead facts showing (1)

14

that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  Partridge v. City of Benton, Ark., 929 F.3d 562, 565 (8th Cir. 2019) (internal quotation marks and alterations omitted).  Regarding the second prong, "clearly established law should not be defined a high level of generality," and must be "particularized to the facts of the case."  White v. Pauly, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted).

Norgren has not identified (and the Court has not found) any controlling cases with similar facts that would have put Commissioner Harpstead on notice that she was violating Norgren's First Amendment rights even though she is not alleged to have had any personal interaction with him.  Because Commissioner Harpstead did not violate a right that was clearly established at the time of the alleged conduct, she is entitled to qualified immunity on the § 1983 claims.

**F.  State Law Claims Against DHS (Counts V through VII)**

Defendants argue that the MHRA claims against DHS must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3). The Eleventh Amendment bars federal court jurisdiction over state law claims against nonconsenting states and state agencies.  Cooper v. St. Cloud State Univ., 226 F.3d 964, 968 (8th Cir. 2000). Defendants thus contend that the MHRA claims must be dismissed without prejudice.

Norgren concedes that the Court lacks subject matter jurisdiction over the MHRA claims, and he agrees that the claims should be dismissed without prejudice.  However, Norgren argues that the Court's dismissal of the MHRA claims should include language stating that the claims are tolled for statute of limitations purposes.

Given the lack of subject matter jurisdiction over the MHRA claims, the Court declines to issue any rulings concerning the statute of limitations or tolling issues.  The MHRA claims are dismissed without prejudice.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants Minnesota Department of Human Services and  Commissioner Jodi Harpstead's Motion to Dismiss the Complaint [Docket No. 7] is **GRANTED**;

2.  Counts I through IV are **DISMISSED with prejudice**; and

3.  Counts V through VII are **DISMISSED without prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

s/Ann D. Montgomery

Dated: January 4, 2023                   ANN D. MONTGOMERY
                                         U.S. DISTRICT COURT